In the Matter of BROOME COUNTY et al., Petitioners, v NEW YORK STATE BOARD OF EQUALIZATION AND ASSESSMENT, Respondent.

Third Department, February 16, 1989

154

APPEARANCES OF COUNSEL

*John E. Murray, County Attorney (Harvey Mervis* of counsel), for petitioners.

*Robert Abrams, Attorney-General (John Q. Driscoll* and *Wayne L. Benjamin* of counsel), for respondent.

**OPINION OF THE COURT**

CASEY, J. P.

Petitioners, Broome County and its Director of Real Property Tax Services (hereinafter Director), seek to annul a determination of respondent which ordered them to bring the county's tax maps into compliance with the requirements of 9 NYCRR part 189. The Real Property Tax Law requires that the county "prepare and maintain in current condition for each city and town therein a tax map approved by [respondent]" (RPTL 503 [1] [a]). Respondent is authorized to "promulgate rules which establish standards, specifications and procedures for the preparation and maintenance of tax maps and shall approve tax maps which satisfy such requirements" (RPTL 503 [1] [b]), and 9 NYCRR part 189 contains the standards, specifications and procedures established by respondent pursuant to this statutory authority. In December 1985, respondent notified the county that its tax maps were not in compliance with the required standards and specifications, and respondent construed the county's response as a refusal to bring its tax maps into compliance. Relying upon the powers conferred upon it by RPTL former 216 (2),* respondent held a hearing, found that the county's tax maps were not in compliance with certain of the requirements contained in 9 NYCRR part 189, and issued the order which petitioners challenge in this proceeding.

■ Petitioners contend that respondent lacks the authority to direct either the county or its Director to comply with the requirements of 9 NYCRR part 189, since the enforcement provisions of RPTL former 216 (2) apply only to assessors or other public officers or employees whose duties relate to assessments. According to petitioners, since the Director does not participate in the actual assessment of property or the preparation of assessment rolls, he is not a public officer whose duties relate to assessments. We reject this argument. The statutory provision is clear and unambiguous; it applies to assessors and any other public officer whose duties *relate to assessments* (RPTL former 216 [2]); it is not limited to those who actually participate in the assessment of real property. Even a cursory reading of the statute which prescribes the powers and duties of a county director of real property tax

---

* A new version of RPTL 216 was enacted in 1988 (L 1988, ch 490), with RPTL 216 (1) containing substantially the same language as RPTL former 216 (2).

services reveals that the Director is a public officer whose duties relate to assessments (RPTL 1532). Thus, for example, one of the services which the Director is required to provide to all cities and towns within the county is to "[a]dvise the assessors on procedures for the preparation and maintenance of assessment rolls, property record cards * * * and other records and documents *relating to real property assessment"* (RPTL 1532 [1] [c] [emphasis supplied]). Included in the statutory minimum qualification standards for the position of director of real property tax services is "knowledge of principles and methods *relating to the assessment of real property"* (RPTL 1530 [3] [a] [emphasis supplied]). Based upon these provisions, respondent's brief generously describes as "curious" petitioners' claim that the Director is not a public officer whose duties relate to assessments. The claim is meritless.

■ Having concluded that the Director is subject to the enforcement provisions of RPTL former 216 (2), we see no relevance in petitioners' contention that the county was improperly named in respondent's compliance order. The county can act only through its officers and employees, and since the Director is the county officer responsible for the preparation and maintenance of tax maps (RPTL 1532 [1] [a]), an order to the Director, in his official capacity, is sufficient. The fact that the order also named the county itself is a matter of form, rather than substance, and has no bearing on the validity of the order. We also note that since RPTL former 216 (2) expressly authorizes the enforcement mechanism pursued by respondent herein, the cases of *Boreali v Axelrod* (71 NY2d 1) and *Matter of State Bd. of Equalization & Assessment v Kerwick* (52 NY2d 557), cited by petitioners, are inapplicable.

■ Next, we also reject petitioners' contention that, in the absence of proof that the county's current tax maps are inaccurate, the order directing that the tax maps be redrawn is arbitrary and capricious. As noted above, the Legislature has authorized respondent to promulgate rules and regulations establishing standards, specifications and procedures for tax maps (RPTL 503 [1] [b]), which respondent has done. Respondent herein directed the public officer responsible for preparing and maintaining the county's tax maps to bring those maps into compliance with certain of the rules and regulations containing specifications and standards for tax maps. We see nothing irrational in respondent's directive, which is authorized by RPTL former 216 (2). The accuracy or inaccuracy of the county's tax maps is irrelevant; the issue is

whether the maps comply with respondent's rules and regulations, and petitioners do not dispute respondent's finding on this issue. The gist of petitioners' argument is that the benefit to be gained by bringing the tax maps into compliance with respondent's rules and regulations does not justify the cost of effecting such compliance. In advancing this argument, petitioners are questioning the reasonableness of the standards and specifications contained in the rules and regulations, which is a challenge to the validity of those rules and regulations. A declaratory judgment action is the appropriate vehicle for such a challenge *(see, Boreali v Axelrod,* 71 NY2d 1, *supra).* Since the record in this transferred CPLR article 78 proceeding has not been adequately developed on this issue, we elect not to exercise our authority to convert the proceeding to a declaratory judgment action pursuant to CPLR 103 (c).

■ Petitioners' final argument, premised on the savings clause contained in 9 NYCRR 189.20, has some merit. The savings clause reads: "Nothing contained in this Part shall affect the validity of a tax map approved by [respondent] pursuant to the said rules and regulations adopted by [respondent] on March 22, 1956 or prior thereto and the parcel identification numbers on such maps used to describe real property on assessment and tax rolls completed prior to January 1, 1984" (9 NYCRR 189.20). Petitioners contend that any prior approval of the tax maps by either respondent or its predecessor, the State Tax Commission, triggers the savings clause. Respondent, on the other hand, contends that the savings clause was only intended to preserve the validity of parcel identification numbers used on assessment and tax rolls completed prior to January 1, 1984. Based upon the clear and unambiguous language of the savings clause, we find petitioners' interpretation to be too expansive, while respondent's construction is too restrictive. The clause refers only to the tax maps approved by respondent, and in light of the provisions of 9 NYCRR 189.19 concerning the effective date of part 189, repeal of prior rules and regulations, and substantial compliance, the scope of the savings clause should not be expanded by interpreting an approval by respondent to include an approval by its predecessor. As to respondent's interpretation of the savings clause, an administrative agency's interpretation of its own regulations is entitled to great weight *(e.g., Matter of Nisnewitz v Board of Regents,* 95 AD2d 950, 951), but the agency is bound by the clear wording of

those regulations and cannot, by interpretation, render the regulation meaningless *(Matter of Adamides v Chu,* 134 AD2d 776, 778, *lv denied* 71 NY2d 806). Respondent's construction of its regulation would render a substantial portion of the savings clause meaningless by ignoring the clear wording, which refers not only to the parcel identification numbers on tax maps that have received prior approval by respondent, but also to the tax maps themselves (9 NYCRR 189.20). Based upon its interpretation of the savings clause, respondent made no finding as to whether it had ever approved the county's tax maps pursuant to prior rules and regulations. Accordingly, the matter should be remitted to respondent for further proceedings on this issue.

MIKOLL, YESAWICH, JR., MERCURE and HARVEY, JJ., concur.

Determination annulled, without costs, and matter remitted to respondent for further proceedings not inconsistent with this court's decision.